IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

LEBENE KONAN,

     Plaintiff,

v.

UNITED STATES POSTAL SERVICE,
UNITED STATES OF AMERICA,
RAYMOND "RAY" ROJAS AND JASON
DRAKE,

     Defendants.

Civil Action No. 3:22-CV-139-S

## MOTION TO DISMISS OF DEFENDANTS
## RAYMOND "RAY" ROJAS AND JASON DRAKE

CHAD E. MEACHAM
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants
Raymond "Ray" Rojas and Jason Drake

## Table of Contents

I.  Background ........................................................................................ 1

II. Legal Standards ............................................................................... 4

   A.  Rule 12(b)(6). ........................................................................... 4

   B.  Qualified immunity. ................................................................. 4

III. Argument and Authorities ............................................................. 5

   A.  Rojas and Drake are entitled to qualified immunity because no claim for a violation of 42 U.S.C. §§ 1981 and 1985 is stated. ............................ 5

   B.  Alternately, Rojas and Drake are entitled to qualified immunity because clearly established law does not support Konan's claim. .............. 12

IV. Conclusion ...................................................................................... 14

# Table of Authorities

## Cases

*Affiliated Prof'l Home Health Care Agency v. Shalala*,
   164 F.3d 282 (5th Cir. 1999) ................................................................. 12

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ........................................................................ 5, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 4

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ............................................................................ 6

*Bustillos v. El Paso Cty. Hosp. Dist.*,
   891 F.3d 214 (5th Cir. 2018) ............................................................... 14

*Cantú v. Moody*,
   933 F.3d 414 (5th Cir. 2019) ............................................................. 7, 8

*City & Cty. of San Francisco v. Sheehan*,
   575 U.S. 600 (2015) .......................................................................... 13

*Davis v. U.S. Dep't of Justice*,
   204 F.3d 723 (7th Cir. 2000) ................................................................. 7

*Dotson v. Griesa*,
   398 F.3d 156 (2d Cir. 2005) .................................................................. 7

*Duncan v. Sec'y of Defense*,
   No. 03-3373, 2004 WL 1118300 (E.D. La. May 18, 2004) ................................ 7

*Green v. State Bar of Tex.*,
   27 F.3d 1083 (5th Cir. 1994) ................................................................. 8

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ......................................................................... 4, 5

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) .......................................................................... 6

*Jackson v. City of Hearne, Tex.*,
　959 F.3d 194 (5th Cir. 2020)............................................................... 9, 10

*Johnson v. Dettmering*,
　No. 19-00744-BAJ-SDJ, 2021 WL 3234623 (M.D. La. July 29, 2021)................ 8

*Kovacic v. Villarreal*,
　628 F.3d 209 (5th Cir. 2010) ................................................................. 4

*Lockett v. New Orleans City*,
　607 F.3d 992 (5th Cir. 2010) ............................................................... 10

*Lynch v. Cannatella*,
　810 F.2d 1363 (5th Cir. 1987) ............................................................. 11

*Mack v. Alexander*,
　575 F.2d 488 (5th Cir. 1978) ................................................................. 7

*Marsaw v. Trailblazer Health Enters., L.L.C.*,
　192 F. Supp. 2d 737 (S.D. Tex. 2002)...................................................... 7

*McKee v. Land*,
　393 F. App'x 235 (5th Cir. 2010)............................................................ 5

*McLin v. Ard*,
　866 F.3d 682 (5th Cir. 2017) ................................................................. 5

*Morgan v. Swanson*,
　659 F.3d 359 (5th Cir. 2011) ................................................................. 5

*Morrow v. Meachum*,
　917 F.3d 870 (5th Cir. 2019) ............................................................... 13

*Mullenix v. Luna*,
　577 U.S. 7 (2015) ............................................................................. 13

*Osahar v. Postmaster Gen. of U.S. Postal Serv.*,
　263 F. App'x 753 (11th Cir. 2008).......................................................... 7

*Pearson v. Callahan*,
　555 U.S. 223 (2009) .......................................................................... 12

*Scott v. Flowers*,
　910 F.2d 210 (5th Cir. 1990)............................................................... 12

*Smart v. Holder*,
    368 F. App'x 591 (5th Cir. 2010)....................................................................... 12

*Southard v. Tex. Bd. of Crim. Justice*,
    114 F.3d 539 (5th Cir. 1997) ...................................................................... 5, 12

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ........................................................................ 11

*Vann v. City of Southaven*,
    884 F.3d 307 (5th Cir. 2018) ........................................................................ 13

*Wyatt v. Fletcher*,
    718 F.3d 496 (5th Cir. 2013) ........................................................................ 13

## Statutes

28 U.S.C. § 2679(b)(1) ........................................................................................ 6

28 U.S.C. § 2679(b)(2)(A) .................................................................................. 6

42 U.S.C. § 1981 ................................................................................................. 1

42 U.S.C. § 1981(a) ............................................................................................ 6

42 U.S.C. § 1981(c) ............................................................................................ 7

42 U.S.C. § 1985 ................................................................................................. 1

42 U.S.C. § 1985(3)....................................................................................... 6, 12

In this case, plaintiff Lenene Konan asserts claims against two employees of the U.S. Postal Service (USPS) under Reconstruction-era civil rights statutes (42 U.S.C. §§ 1981 and 1985) that prohibit certain race-based discrimination or conspiracies. (*See* Doc. 7, ¶¶ 97–104 (first amended complaint).) In particular, Konan alleges that USPS mail carrier Raymond "Ray" Rojas,[1] along with Jason Drake, the (now-former) postmaster of the Euless, Texas post office from which Rojas delivers mail, violated her rights in connection with the delivery (or nondelivery) of mail to two rental properties that Konan owns in Euless. As discussed below, though, Konan fails to state any claim for relief against Rojas and Drake, and these defendants are entitled to qualified immunity.

## I.    Background

Konan owns two houses in Euless, Texas, that she apparently operates as boarding houses by renting rooms to different individuals. (Doc. 7, ¶¶ 1, 9.) The houses do not have their own mailboxes on site at the physical location of each house. (Doc. 7, ¶ 10.) Instead, each house is in a neighborhood in which all the houses have designated mailboxes contained within a single metal structure that is stationed in the middle of the neighborhood. (Doc. 7, ¶ 10.) The mail for each residence is deposited into the assigned box in this central structure, and then can be retrieved by unlocking that specific box. (Doc. 7, ¶ 10.) Konan explains that she had a key for each house's mailbox and that her routine practice was to collect the mail addressed to the various tenants at those houses

---

[1] The first amended complaint identifies this defendant's last name as Rojas, but it is actually Riojas. This motion will nonetheless use the spelling from the first amended complaint.

and distribute it to them.  (Doc. 7, ¶ 11.)  In addition, although Konan apparently does not herself live at either house (she instead states that "[f]rom time to time, [she] stays at each Residence to keep a watchful eye on how the residents treat her properties"), she "had much of her own business mail" delivered to one of the houses.  (Doc. 7, ¶¶ 9, 11.)

This situation changed in May 2020, according to Konan, when USPS mail carrier Rojas changed the lock on the mailbox for one of her rental houses (referred to as the Saratoga Residence) and designated a person named Ian Harvey (a tenant at the property, according to Konan) as the person with access to the mailbox.  (*See* Doc. 7, ¶¶ 12–14.) Konan protested this change with USPS and states that she was asked to provide information about who owned the property and to confirm her own identity.  (Doc. 7, ¶¶ 17–18.)  A USPS supervisor informed Konan that Rojas believed that Harvey was the "actual owner" of the Saratoga Residence and that while this issue was being investigated, USPS would not be delivering any mail for the house.  (Doc. 7, ¶¶ 18–19.) Konan states that she was later informed that Drake, the postmaster of the Euless post office, had directed his employees not to deliver any mail to the Saratoga Residence "unless the individuals to whom mail was addressed at the [house] first provided proof that they were actually living there."  (Doc. 7, ¶ 23.)  According to Konan, mail addressed to her and others at the house was marked as "undeliverable," including "[i]mportant mail addressed to both Plaintiff Konan and her tenants, including doctor's bills, medications, credit card statements, car titles and property tax statements."  (Doc. 7, ¶ 24.)

Although this situation initially occurred at only the Saratoga Residence owned by

Konan in Euless, Konan states that when Rojas "discovered that Plaintiff also owned" the second similar rental house in Euless (referred to as the Trenton Lane Residence), "he started to withhold mail addressed to that location as well," and did so "with the support of Drake." (Doc. 7, ¶¶ 37, 38.)  Konan later attempted to have mail for the Saratoga Residence held at the Euless post office for her to pick up, but states that the "employees at the Post Office in Euless, acting on the instructions of Postmaster Drake, refused to give Plaintiff possession of the mail addressed to the Saratoga Residence unless and until she supplied the personal ID's of each person living at the Saratoga Residence to whom the mail was addressed." (Doc. 7, ¶ 41.)

According to Konan, there was an improper race-based motivation for these actions.  Konan states that she is an "African-American woman [who] owned the Saratoga Residence and leased rooms in the Saratoga Residence to white people," including the tenant Harvey (for whom the lock for the mailbox for the Saratoga Residence was changed, kicking off Konan's dispute with USPS).  (Doc. 7, ¶ 15; *see also* Doc. 7, ¶ 13 (Harvey is white).)  Konan alleges that "[o]n information and belief, mail carrier Rojas has not unilaterally changed the lock on any other residence owner's address on his route; nor has he refused to deliver mail to residences owned by white people where there are multiple individuals living at their properties." (Doc. 7, ¶ 16.) According to Konan, "Rojas singled [her] out for discriminatory treatment because she is a successful African American woman and Rojas is not happy about the fact that she owns Residences that he is required to service," and he and Drake "do not like the idea that a black person owns the Residences, and leases rooms in the Residences to white

people." (Doc. 7, ¶¶ 16, 28.)

Konan has asserted a claim against Rojas and Drake "[p]ursuant to 42 U.S.C. § 1981 and 1985 . . . for conspiracy to deprive [Konan] of her constitutional rights to equal protection of the laws and the privileges and immunities guaranteed to her by the Fifth and Fourteenth Amendments of the Constitution of the United States." (Doc. 7, Prayer § B; *see also* Doc. 7, ¶¶ 97–104.) Rojas and Drake assert the defense of qualified immunity and move to dismiss under Rule 12(b)(6).

## II.    Legal Standards

### A.    Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### B.    Qualified immunity.

Qualified immunity insulates a government official from civil liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant relies on qualified immunity, the burden is on the plaintiff to negate this defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818),

### III.    Argument and Authorities

Under the doctrine of qualified immunity, a government official or employee cannot be subjected to potential personal liability unless the plaintiff shows both that (1) the defendant "violated a statutory or constitutional right" of the plaintiff's and that (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).  Here, Konan cannot satisfy either requirement.  As explained below, (a) no claim for a violation of 42 U.S.C. §§ 1981 or 1985 is stated, and in any event, (b) there was no clearly established law dictating or proscribing the defendants' alleged conduct at the relevant time in the specific circumstances presented.  Accordingly, a dismissal under Rule 12(b)(6) is appropriate.[2]

### A.    Rojas and Drake are entitled to qualified immunity because no claim for a violation of 42 U.S.C. §§ 1981 and 1985 is stated.

Alleging that Rojas and Drake have "deprived [Konan], directly or indirectly, of the equal protection of the laws and of her privileges and immunities under the

---

[2] A Rule 12(b)(6) motion is a proper vehicle for raising the defense of qualified immunity, including with respect to statutory claims of the type asserted by Konan here.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 666, 687 (2009) (reversing the Second Circuit's judgment that had affirmed the denial of a motion to dismiss raising the defense of qualified immunity); *McLin v. Ard*, 866 F.3d 682, 688–89, 696 (5th Cir. 2017) (affirming a Rule 12(b)(6) dismissal based on qualified immunity); *see also Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 541–42, 556 (5th Cir. 1997) (reversing a district court's denial of a qualified-immunity motion to dismiss addressed to a section 1985 claim); *McKee v. Land*, 393 F. App'x 235, 236 (5th Cir. 2010) (same).

Constitution on the basis of her race," (Doc. 7, ¶ 102), Konan brings a claim against them pursuant to 42 U.S.C. §§ 1981 and 1985.[3]  As quoted by Konan in the first amended complaint, section 1981 guarantees that "'[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . [] the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.'"  (Doc. 7, ¶ 99 (quoting 42 U.S.C. § 1981(a)).)  And within section 1985, Konan invokes section 1985(3), which authorizes the recovery of damages against "'two or more persons in any State or Territory [who] conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'"  (Doc. 7, ¶ 100 (quoting 42 U.S.C. § 1985(3)).)  But as discussed below, no claim for relief is stated under either statute.

First, neither statute applies where the alleged conduct at issue is that of *federal* officials, i.e., the conduct is under color of federal law rather than state law—and for that

---

[3] Konan also cites 28 U.S.C. § 2679(b)(2)(A) for the proposition that "Rojas and Drake may be sued for violating [Konan]'s constitutional rights."  (Doc. 7, ¶ 101.)  But that statute does not provide any independent cause of action.  Section 2679(b)(2)(A) is a provision within the Federal Tort Claims Act, as amended by the Westfall Act, relating to that statute's conferral of absolute immunity on federal employees for state-law claims for negligence or other tortious activity.  That grant of immunity is set forth in section 2679(b)(1) (which "preclude[s]" any such tort claim against a federal employee), and section 2679(b)(2)(A) in turn makes clear that this immunity "does not extend or apply to a civil action against an employee of the Government . . . brought for a violation of the Constitution of the United States."  28 U.S.C. § 2679(b)(1) & (2)(A).  Section 2679(b)(2)(A) does not, however, confer or create any cause of action in favor of anyone, and thus does not serve as the basis for any claim here.  *See also Hernandez v. Mesa*, 140 S. Ct. 735, 748 (2020) (explaining that by enacting section 2679(b)(2)(A), Congress merely "made clear that it was not attempting to abrogate *Bivens* [*v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)]," which allows for certain limited classes of constitutional claims to be asserted against federal employees).  In addition, Rojas and Drake are not arguing that Konan's claims against them are precluded by the immunity conferred in section 2679(b)(1).

reason alone, no claim is available to Konan here.  Section 1981 expressly specifies that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law"—but makes no mention of activities under color of federal law.  42 U.S.C. § 1981(c).  Thus, "[u]nder the clear language of the statute, plaintiff may not maintain claims of discrimination by federal defendants acting under the color of federal law under Section 1981." *Duncan v. Sec'y of Defense*, No. 03-3373, 2004 WL 1118300, at *5 (E.D. La. May 18, 2004); *see also Marsaw v. Trailblazer Health Enters., L.L.C.*, 192 F. Supp. 2d 737, 750 (S.D. Tex. 2002) ("The plain language of § 1981(c) prohibits discriminatory actions conducted under color of state law only, and the Court is unaware of any authority for extending § 1981(c) to discriminatory actions conducted under color of federal law.").[4]  Likewise, under Fifth Circuit precedent, section 1985(3) "does not apply to federal officers." *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019).  Specifically, section 1985 "'provide[s] a remedy for deprivation of rights under color of state law and do[es] not apply when the defendants are acting under color of federal law.'" *Id.* (quoting *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978)).[5]

---

[4] It does not seem that the Fifth Circuit has had occasion to specifically consider the meaning of section 1981(c) (which was added to the statute in 1990) in the context of a claim against federal actors.  But the consensus among courts of appeals that have considered this issue appears to be consistent with the district court decisions within the Fifth Circuit that are cited above, to the effect that a section 1981 claim does not lie against federal actors.  *See, e.g.*, *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 725–26 (7th Cir. 2000) (explaining that section 1981 does not apply to actions taken under color of federal law); *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005) (same); *Osahar v. Postmaster Gen. of U.S. Postal Serv.*, 263 F. App'x 753, 763 (11th Cir. 2008) (same).

[5] Notably, the *Cantú* decision recognized that *Mack*'s holding that section 1985 does not apply to federal actors has been "criticized" by other courts for allegedly "failing to grapple with Supreme Court precedent," but nonetheless the Fifth Circuit did *not* determine that *Mack* is no longer binding precedent.

Second, even if it were assumed that either of section 1981 or section 1985(3) could potentially apply to the conduct of federal officials like Rojas and Drake, Konan's allegations fail still to state any claim for relief under these statutes.

Section 1981.  In order to state a race-discrimination claim under section 1981, "a plaintiff must allege facts in support of the following elements:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute."  *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).  Konan alleges that she is an African-American and thus the first element is not at issue.  But Konan's attempted claim fails at the second element, because Konan fails to set forth any well-pleaded facts showing an intent to discriminate on the basis of race by Rojas or Drake.  The crux of Konan's theory of racial discrimination appears in her conclusory assertions that "Rojas singled [Konan] out for discriminatory treatment because she is a successful African American woman and Rojas is not happy about the fact that she owns Residences that he is required to service" and that both he and Drake "do not like the idea that a black person owns the Residences, and leases rooms in the Residences to white people." (Doc. 7, ¶¶ 16, 28.)  However, no well-pleaded factual allegations support these conclusory theories of race-based animus.  Konan states that "[o]n information and

---

*See Cantú*, 933 F.3d at 414.  As one district court has recently noted, *Cantú*'s explanation that section 1985(3) does not apply to federal actors "is still 'good law' in this Circuit and controls this case." *Johnson v. Dettmering*, No. 19-00744-BAJ-SDJ, 2021 WL 3234623, at *4 (M.D. La. July 29, 2021); *see also id.* at *5 ("The proposition that a decision of the Fifth Circuit Court of Appeals incorrectly interprets an opinion by the Supreme Court of the United States must be addressed to the Fifth Circuit, the decisions of which are binding on this Court." (internal quotation marks and citation omitted)).

**Motion to Dismiss of Defendants Raymond "Ray" Rojas and Jason Drake – Page 8**

belief," Rojas did not "unilaterally change[] the lock on any other residence owner's address" or "refuse[] to deliver mail to residences owned by white people where there are multiple individuals living at their properties." (Doc. 7, ¶ 16.) But as the use of the phrase "on information and belief" indicates, Konan really has no idea whether this might be true. Crucially, Konan does not plead any facts showing that some *similarly situated* white property owner was treated differently than her, i.e., in a situation where there was some question whether a tenant or non-resident owner (like Konan) was the proper recipient of mail at an address. (*See* Doc. 7, ¶¶ 13–14 (allegations about the scenario at the house owned by Konan where a tenant named Harvey obtained access to the mail box, but identifying no similar scenario at any white-owned property).) The lack of any well-pleaded factual allegations showing a similarly situated comparator who received allegedly better treatment is fatal to Konan's claim. *See Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201–02 (5th Cir. 2020) (explaining, in a case where the plaintiff was asserting a section 1985(3) claim for alleged race discrimination, that "[b]ecause [the plaintiff] does not plead disparate treatment among similarly situated persons, he does not state an equal protection claim").

Indeed, a comparison to the *Jackson* case is instructive and shows why Konan's claim fails. In *Jackson*, the plaintiff had actually identified, by name and with various factually detailed allegations, seven separate persons claimed to be comparators who had allegedly received better treatment due to their race. *See id.* at 201. But the Fifth Circuit found, on the basis of the pleadings alone, that "[n]one of those individuals [was] similarly situated to [the plaintiff]," *id.* at 201—and then further explained that the

plaintiff was *not* entitled to discovery in an attempt to identify other similarly situated comparators because of the failure to allege sufficient facts to support a claim, *id.* at 202. Here, where Konan has provided even less in the way of factual allegations about alleged comparators—she identifies no alleged comparator by name or even address—her pleadings are even more deficient than the pleadings found lacking in *Jackson*, and the case for a dismissal under Rule 12(b)(6) is correspondingly stronger.

Additionally, Konan does not plead any facts indicating that Rojas (or Drake) was even *aware* of Konan's status as an African-American at the time the allegedly discriminatory treatment began in May 2020 when the tenant Harvey was given access to the Saratoga Residence's mail box with a newly changed lock.  (*See* Doc. 7, ¶¶ 12–15.) Without facts showing such knowledge and an accompanying discriminatory intent, no claim for relief under section 1981 is stated.

Section 1985(3).  "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States."  *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010).  "Additionally, the conspiracy must also have a racially based animus."  *Id.*  As discussed below, Konan's attempted claim under section 1985(3) fails to satisfy a number of these elements.

At the first element, no actionable conspiracy is shown.  Rojas and Drake are alleged to have conspired with each other.  (*See* Doc. 7, ¶ 101 ("Rojas and Drake

conspired to violate [Konan's] constitutional rights . . . .").)  But Rojas and Drake are both officials within the same government organization, USPS.  (*See* Doc. 7, ¶¶ 3–4.)  As such, under Fifth Circuit precedent there is no involvement of two or more separate "persons" so as to constitute an actionable section 1985(3) conspiracy.  *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020) (rejecting a section 1985(3) claim against various state officials where the allegation was that Texas Attorney General Ken Paxton had "worked in concert with employees" in taking the disputed actions, with an explanation that "Paxton cannot conspire with his employees for purposes of § 1985(3)").  Konan is really complaining of the actions of a single entity (USPS) and therefore her allegations of an intra-entity "conspiracy" fail as a matter of law.  *See id.* ("It is a long-standing rule in this circuit that a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." (internal quotation marks and citation omitted)).  Moreover, even if it were assumed contrary to Fifth Circuit precedent that some conspiracy within USPS would be legally sufficient to support a claim, "[b]ald allegations that a conspiracy existed are insufficient."  *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987).

Konan also fails to allege any facts showing some deprivation of the equal protection of the laws based on a racial motivation, as required by the other elements under section 1985(3).  This is true for all the same reasons discussed above that Konan's section 1981 claim fails—her allegations of some race-based motivation on the part of Rojas and Drake in violation of equal-protection tenets or any other legal guarantee are

speculative and conclusory, and are not supported by well-pleaded facts showing any

actual instance of race-based disparate treatment.

* * *

For all these reasons, Konan fails to state any claim under section 1981 or section

1985(3), and Rojas and Drake are entitled to qualified immunity and a dismissal of all

claims against them[6] on this ground alone.  *See Southard v. Tex. Bd. of Crim. Justice*, 114

F.3d 539, 556 & n.30 (5th Cir. 1997) (explaining that a defendant was entitled to

qualified immunity as to a claim under section 1985(3) because the plaintiff failed to state

a constitutional violation).

## B.    Alternately, Rojas and Drake are entitled to qualified immunity because clearly established law does not support Konan's claim.

Even if it were assumed that Konan had stated a claim for relief, a dismissal is still

required because Konan cannot make the necessary additional showing that clearly

---

[6] It is noted that, in addition to seeking an award of money damages against Rojas and Drake, Konan also requests a permanent injunction against them.  (Doc. 7, ¶ 104 & Prayer § C.)  Qualified immunity typically applies only to personal-capacity damages claims and does not apply when the issue is whether to enjoin future conduct.  *See Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009).  But that is because injunctive relief can be obtained against a government employee only in an official capacity (if at all), *Scott v. Flowers*, 910 F.2d 210, 213 (5th Cir. 1990)—and it is not at all clear that Konan has attempted to sue Rojas or Drake in an official capacity.  (Drake, for example, is no longer the postmaster at the Euless post office and thus his successor in that position presumably would need to be substituted as the defendant in order to seek injunctive relief relating to the postmaster's actions at the Euless post office.)  Regardless, any request for an injunction fails here for all the same reasons that Konan fails to state any claim for relief (and additionally, it is noted that section 1985(3) specifically authorizes only "an action for the recovery of damages," 42 U.S.C. § 1985(3)).

Were Konan to attempt to sue Rojas and Drake in their official capacities, sovereign immunity would apply to bar any claim for damages because a suit against a government official in an official capacity is considered a suit against the government itself.  *See Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010).  The government has not waived sovereign immunity for suits under the civil rights statutes, including specifically under sections 1981 and 1985.  *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).

established law was in place at the time of the alleged violations to dictate or proscribe the specific details of Rojas's and Drake's conduct in the situation presented.

Identifying clearly established law sufficient to negate the defense of qualified immunity requires an "extraordinary showing" from a plaintiff. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (internal quotation marks and citation omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. Thus, the plaintiff must identify some case giving notice that certain actions were required or forbidden "in the situation presented," *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018), by pointing to a "controlling precedent that squarely governs the specific facts at issue," *Morrow*, 917 F.3d at 876 (cleaned up).

Given these principles, the Fifth Circuit has stressed that the qualified-immunity analysis requires framing the relevant question "with specificity and granularity." *Id.* at 874–75. Accordingly, just as a plaintiff cannot overcome qualified immunity on a Fourth Amendment claim by defining the relevant right as "the right to be free from unreasonable searches and seizures," *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015), vague references to general principles within the Constitution or

elsewhere, like "equal protection"[7] or "due process," are insufficient as well.

Here, Konan had not identified—and Rojas and Drake likewise are not aware of—any clearly established law in the form of a precedent of the Fifth Circuit or the Supreme Court (or even a robust consensus of caselaw from elsewhere) that would have put them on notice that handling the mail at Konan's two rental properties in Euless in the manner alleged in the complaint would constitute a violation of section 1981 or section 1985(3) so as to render them potentially liable for damages to Konan.  In the absence of such a showing, Rojas and Drake are entitled to qualified immunity and to be dismissed from this action.  *See, e.g.*, *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (explaining that the defendants were entitled to qualified immunity because the plaintiff had "not carried her burden of pointing this panel to any case that shows, *in light of the specific context of this case*, that the [defendants'] conduct violated clearly established law" (emphasis added)).

## IV.    Conclusion

Rojas and Drake are entitled to qualified immunity and all claims asserted against them in this action should be dismissed, with prejudice.

---

[7] Moreover, it is well established that the Fourteenth Amendment (which Konan cites, *see* Doc. 7, Prayer § B), does not apply to federal actors.

**Motion to Dismiss of Defendants Raymond "Ray" Rojas and Jason Drake – Page 14**

Respectfully submitted,

CHAD E. MEACHAM
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants
Raymond "Ray" Rojas and Jason Drake

## Certificate of Service

On April 26, 2022, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney